Filed 7/19/13  Kulkarni v. Upasani CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AVINASH KULKARNI,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>MEERA UPASANI et al.,<br><br>    Defendants and Appellants;<br><br>SUNILA KULKARNI,<br><br>    Defendant and Respondent. | G045914<br><br>(Super. Ct. No. 30-2009-00322804)<br><br>O P I N I O N |

Appeal from a judgment and postjudgment orders of the Superior Court of Orange County, David T. McEachen, Judge.  Affirmed.

Law Offices of Rodney L. Donohoo, Rodney L. Donohoo and Kevin Rhine for Plaintiff and Appellant.

Rutan & Tucker, Lisa N. Neal and Chelsea A. Epps for Defendants and Appellants.

Nicholas & Butler, Craig M. Nicholas and Tracy J. Jones for Defendant and Respondent.

*        *        *

INTRODUCTION

In 1990, Neelam Kulkarni, the wife of Avinash Kulkarni,[1] took their infant son, Soumitra Kulkarni, from their home in Orange County, California, and flew to her parents' home in India. Avinash was unaware of Neelam's plans, and did not consent to Soumitra's removal from the United States. More than 19 years later, Avinash sued several family members and acquaintances, accusing them of having conspired with Neelam to abduct Soumitra. At trial, the court granted nonsuit motions of Sunila Kulkarni and Madhavi Nerurkar. A jury found that Meera Upasani and Mohan Upasani had no knowledge that Neelam planned to leave the United States, and therefore found in favor of Meera and Mohan and against Avinash. Avinash's arguments on appeal are without merit, and we therefore affirm the judgment.

First, Avinash challenges several of the trial court's evidentiary rulings. Either the court did not abuse its discretion in those rulings, or any error was harmless.

Second, Avinash argues the trial court erred by granting Sunila's and Madhavi's nonsuit motions. The court properly determined that, as a matter of law, the evidence presented by Avinash against Sunila and Madhavi was insufficient to permit the jury to find in Avinash's favor.

Third, the trial court properly denied Avinash's motion for a new trial, which was based on the same evidentiary arguments and claims of improperly nonsuiting Avinash.

Finally, the trial court did not err in denying Avinash's motions to tax costs. Defendants' settlement offers under Code of Civil Procedure section 998 were made in

_____

[1] We will at times refer to Avinash Kulkarni, Neelam Kulkarni, Soumitra Kulkarni, Sunila Kulkarni, Meera Upasani, Mohan Upasani, Madhavi Nerurkar, and Rajesh Nerurkar by their first names to avoid confusion. We intend no disrespect. Sunila is not related to Avinash, Neelam, or Soumitra. Sunila, Meera, Mohan, and Madhavi will be referred to collectively as Defendants.

2

good faith and were greater than the amount Avinash recovered from Defendants at trial—which was zero.

Because we affirm the judgment, we need not address the cross-appeal, in which Meera, Mohan, and Madhavi argue the trial court erred by failing to grant their motions for summary judgment on the ground Avinash's claims against them were barred by the applicable statute of limitations.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Avinash and Neelam married in India in December 1988. Shortly thereafter, they moved to Orange County, California. Neelam gave birth to Soumitra in March 1990.

Mohan and Meera, who are husband and wife, were social acquaintances of Avinash and Neelam, as was Sunila. Madhavi is Neelam's younger sister, and is the ex-wife of Rajesh Nerurkar.

In October 1990, Neelam and Soumitra left the United States for India, without informing Avinash. Two days after they left, Avinash spoke with Neelam by telephone, and confirmed she and Soumitra were staying at her family's home in India.

It is undisputed that Avinash never travelled to India to see Neelam and Soumitra. Avinash never tried to bring Soumitra home. Neelam had filed a police complaint after she arrived in India, alleging that Avinash and his family had mistreated her. According to Avinash, under India's legal system, there was a possibility that, based on the complaint, he could be indefinitely incarcerated without bail or a trial if he entered the country. At trial in this case, Avinash's expert witness on international child abduction testified the Indian penal code has been misused by women to extort money from their husbands, to incarcerate their husbands and their husbands' families, and to prevent their husbands from travelling to India to recover abducted children. The expert did not express an opinion, however, as to whether Neelam was misusing the system in that way, or whether the claims in her complaint were true or false. The expert opined

3

that Avinash had done all he could legally do, given the state of Indian law, to recover Soumitra.

In 1993, Neelam filed for dissolution of her marriage to Avinash in the family court in India. In her petition, Neelam claimed Avinash had been physically and emotionally abusive during their marriage. A judgment of dissolution was entered in April 1995, and Neelam was awarded sole custody of Soumitra.

In 2000, Neelam sought to enforce the Indian court judgment and collect overdue child support from Avinash, who was at that time living in Arizona. Neelam gave Rajesh her power of attorney to file a lawsuit against Avinash in Arizona. Rajesh believed, at that time, Neelam had been wronged by Avinash because Avinash had not paid child support, and that Neelam had not wrongfully abducted Soumitra.

Also in 2000, Avinash sued Neelam and her mother, Urmila Thakur, in the Orange County Superior Court, for violation of Civil Code section 49, subdivision (a), intentional infliction of emotional distress, and negligent infliction of emotional distress, based on taking Soumitra to India. A default judgment was entered against Neelam and Thakur.

In 2008, Neelam travelled to the United States with Soumitra, when he arrived to attend college in California; she was arrested on charges of criminal child abduction when she arrived at Los Angeles International Airport. Neelam pleaded guilty.

In November 2009, Avinash filed a complaint against Does 1 through 20, for violation of Civil Code section 49, subdivision (a), negligence per se, and intentional and negligent infliction of emotional distress. Defendants and Rajesh were named in the complaint by means of Doe amendments. The claims were based on the allegation that Defendants and Rajesh "knowingly aided and abetted [or] conspired with Neelam and [Thakur] and . . . facilitated in the abduction, including but not limited to, providing [Neelam] with money, transportation, assistance in fraudulently obtaining a duplicate passport and birth certificate, and arranging and paying for airline tickets from Orange

4

County to India for Neelam and Soumitra." Avinash dismissed the action against Rajesh, with prejudice, in exchange for Rajesh's agreement to appear and truthfully testify at his deposition and the trial in this matter.

Mohan, Meera, and Madhavi filed motions for summary judgment, arguing, inter alia, Avinash's claims were barred by the applicable statute of limitations. The trial court denied the motions on the ground the statute of limitations on the Civil Code section 49, subdivision (a) claim did not begin to run until 2008.[2]

The case proceeded to trial. At the close of Avinash's case, the trial court granted Madhavi's and Sunila's motions for nonsuit. At the conclusion of all testimony, the jury found in favor of Mohan and Meera. In the special verdict form, the jury found neither Meera nor Mohan was aware of Neelam's plan to abduct Soumitra.

The trial court denied Avinash's motion for a new trial, finding as follows: "Plaintiff had his day in Court and was afforded every opportunity to present evidence to the jury to establish his claims. The jury determined that Plaintiff failed to meet his burden after hearing three weeks of trial testimony." The court also denied Avinash's motions to tax costs. Avinash timely appealed. Mohan, Meera, and Madhavi filed a cross-appeal based on the trial court's denial of the motions for summary judgment.

## DISCUSSION

### I.

### *ADMISSION OF EVIDENCE*

Avinash argues the trial court erred by (1) admitting evidence that he physically and emotionally abused Neelam during their marriage, (2) excluding evidence

---

[2] Sunila also filed a motion for summary judgment, which was scheduled for a hearing after Mohan and Meera's and Madhavi's motions were heard. Sunila's motion raised the same arguments as the other motions. After the other motions for summary judgment were denied, Sunila withdrew her motion.

that he passed a polygraph test, disproving the claims of abuse, and (3) admitting certain testimony of Defendants' expert witness on emotional distress damages. We review the trial court's rulings on the admissibility of evidence for abuse of discretion. (*Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1111.)

A.

*Evidence of Avinash's Abuse of Neelam*

Avinash argues the trial court erred by permitting the admission of evidence that he abused Neelam. He contends the evidence was irrelevant, constituted inadmissible hearsay, and violated Evidence Code section 352. We address each contention in turn.

1. *Relevance*

Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action," including but not limited to "evidence relevant to the credibility of a witness." (Evid. Code, § 210.) Defendants argue that the evidence of abuse was relevant to disprove Avinash's contention that he could not return to India to reunite with Soumitra, despite knowing Soumitra's whereabouts, and to impeach Avinash's testimony that his relationship with Neelam and Soumitra was good before Neelam left for India. Further, Defendants contend Avinash placed most of the testimony and documentary evidence of the alleged abuse before the jury, and cannot now be heard to complain it was not relevant. (*Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1555 ["If an appellant offers inadmissible matters into evidence, he cannot complain of its admission on appeal"].)

Avinash conceded in the trial court that the evidence of Neelam's claims of abuse was relevant to the case. As Avinash argued in his motion in limine: "[E]vidence of Neelam's allegations of abuse will undoubtedly be disclosed before the jury, as it is central to [Avinash]'s 'defense' to Defendants' claims that [Avinash] could have gone at

6

any time to India to obtain or visit his son." Avinash therefore asked the trial court to admit the evidence to explain Avinash's actions, but not as a defense to the Civil Code section 49, subdivision (a) claim of child abduction, and that the jury be so instructed. The trial court instructed the jury as follows: "It is illegal in the State of California to participate or engage in the abduction or enticement of a child from a parent. [¶] In this case you must accept that a child . . . was abducted from the plaintiff, Avinash Kulkarni, and [it] is not a defense to child abduction that the defendants . . . believed the child would be better off with the mother or that plaintiff, Avinash Kulkarni, was abusive in some way. That is not the decision for the defendants to make in this case and does not justify their action."

Accordingly, Avinash agreed at trial that evidence of alleged abuse of Neelam was relevant. Even if he had not so agreed, the evidence of when Defendants learned about Neelam's abuse allegations was relevant to prove or disprove a central element of Avinash's case. Further, the evidence was relevant to prove or disprove Avinash's claim that he could not attempt to regain custody of Soumitra due to any trumped-up claims of abuse, which was, in turn, relevant to Defendants' statute of limitations defense.

2. *Hearsay*

Avinash next argues that evidence of Neelam's allegations of abuse was hearsay and should have been excluded. Defendants argue Avinash failed to object to much of the testimony that he now claims is inadmissible hearsay, therefore forfeiting the argument on appeal. Avinash agrees that he did not object to some of the testimony. Rather, he contends that by bringing a motion in limine to exclude evidence of alleged abuse, he preserved all hearsay objections. An objection may be preserved on appeal by the filing of a motion in limine if "(1) a specific legal ground for exclusion was advanced through an in limine motion and subsequently raised on appeal; (2) the in limine motion was directed to a particular, identifiable body of evidence; and (3) the in limine motion

7

was made at a time, either before or during trial, when the trial judge could determine the evidentiary question in its appropriate context." (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 210.)

Avinash's motion in limine did not raise hearsay as a ground for excluding the evidence; the motion claimed the evidence was irrelevant because abuse is not a defense to child abduction, and because the admission of such evidence would be unduly prejudicial and would cause an undue consumption of time. Therefore, Avinash's motion in limine did not preserve the hearsay objection on appeal, and his argument that the following evidence, to which no hearsay objection was interposed, was inadmissible hearsay has been forfeited: (1) Rajesh's testimony about Avinash's trustworthiness; (2) Rajesh's testimony that social services was called because Neelam told Avinash not to hit the baby; (3) Meera's testimony that Avinash's green card was on hold due to Neelam's abuse charges; (4) reference to Neelam's statement in an affidavit that torture caused by Avinash was unbearable; and (5) Santosh Limaye's testimony that Neelam made statements about who had bought her airline ticket to India.[3]

We next consider whether the trial court erred by admitting the evidence to which Avinash's counsel interposed a timely hearsay objection. (Avinash objected to Limaye's testimony that Neelam did not want to discuss what had been happening between her and Avinash, and Avinash's father told Limaye that Neelam needed to learn how to behave. The trial court sustained Avinash's counsel's objections to this testimony. Avinash did not move to strike the answers that had been given, but the trial court instructed the jury not to consider evidence to which an objection had been sustained. There is no issue for us to review with respect to that testimony.)

Madhavi's testimony that Neelam told her in 1993 or 1994 that Avinash was emotionally and physically abusive was offered not for its truth, but to show

---

[3] Limaye is the ex-husband of Avinash's sister.

8

Madhavi's lack of knowledge in 1990 of Neelam's plan to return to India. The same is true of Meera's testimony that Neelam told her in 2008 that she had been abused by Avinash, and Mohan's testimony that he was not aware of Neelam's claims of abuse when he signed an affidavit on behalf of Avinash in 1992 because Mohan would not have helped Avinash get a green card if he had been aware of the claims of abuse.[4] (See generally *People v. Davis* (2005) 36 Cal.4th 510, 535-536 ["Evidence of an out-of-court statement is also admissible if offered for a nonhearsay purpose—that is, for something other than the truth of the matter asserted—and the nonhearsay purpose is relevant to an issue in dispute"].)

Avinash argues the trial court erred by allowing Defendants to read into the record statements from Rajesh's affidavit, filed in the Arizona court, in support of Neelam's claim for child support from Avinash. The sworn statements, in which Rajesh expressed his beliefs that Avinash had emotionally and physically abused Neelam, that social services had been called to the family home, that charges of alleged abuse were filed against Avinash, and that Neelam did not abduct Soumitra but rather was fleeing from Avinash's alleged abuse, were not offered for their truth, but to impeach Rajesh's contradictory testimony in the trial of the present case. (Evid. Code, § 1235.)

Avinash also complains that Rajesh was asked at trial if he was aware someone had called social services because he or she had heard Neelam tell Avinash not to hit the baby. Rajesh responded, "I don't recall"; we fail to see how the trial court erred in failing to sustain an objection to the question.

Avinash argues the trial court erred by allowing Defendants' counsel to quote from a "Child Protection Services report that contained numerous hearsay

---

[4] Mohan's affidavit reads, in relevant part, as follows: "I did not observe any signs of stress in [Avinash and Neelam's] relationship during any of these meetings. I also did not notice any abusive behavior by Avinash towards his wife or son. No mention was made to me of any physical abuse by Avinash to his wife or his son, in those meetings. [¶] I find Avinash to be of high moral character and integrity."

9

statements from Neelam regarding abuse." Avinash testified on cross-examination that he was not aware of any claims that someone had called social services because he or she heard Neelam tell Avinash not to hit the baby. The trial attorney for Meera, Mohan, and Madhavi provided Avinash with a copy of the social services report in order to refresh his recollection. Counsel then asked: "Does this—this is one of the first claims that was submitted. It says, 'there was concern for the baby'—," at which point Avinash's counsel objected on hearsay grounds. After argument, the court ruled that the testimony would not be permitted. Nothing in the appellate record indicates the report was ever referred to again. The jury was properly instructed that what the attorneys say in court is not evidence; there was no hearsay evidence improperly before the jury because the question was stopped before it was completed, and no response was ever given.

Avinash also claims the trial court erred by admitting into evidence several documents that contain hearsay statements regarding the alleged abuse. Avinash, not Defendants, requested that the Indian divorce petition filed by Neelam, the Indian contempt petition, and the notice of filing of a foreign judgment in Arizona be admitted into evidence. Avinash cannot now argue that his use of hearsay statements from those documents was proper, while Defendants' use of the same documents was improper. Avinash offered one isolated statement from those documents to establish that Meera helped Neelam arrange to purchase the plane tickets to India. Defendants offered additional portions of the same documents to put in context the statement Avinash was using. (Evid. Code, § 356 ["Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence"].)

10

Finally, the Arizona divorce pleadings were not hearsay because they were not admitted for their truth.  Rather, they were admitted to impeach Rajesh, whose statements in the divorce proceeding pleadings were contrary to his testimony in the trial in this matter.  (Evid. Code, § 1235.)

3. *Evidence Code Section 352*

Avinash also argues the evidence of his alleged abuse of Neelam should have been excluded under Evidence Code section 352 because "its probative value [was] substantially outweighed by the probability that its admission [would] (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  Evidence is admitted in violation of section 352 only if "it poses an intolerable 'risk to the fairness of the proceedings or the reliability of the outcome' [citation]."  (*People v. Waidla* (2000) 22 Cal.4th 690, 724.)  "'The prejudice which . . . Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.'  [Citations.]  'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors.'"  (*People v. Zapien* (1993) 4 Cal.4th 929, 958.)

Avinash failed to show the evidence posed an intolerable risk to the fairness of the proceedings, or to the reliability of the jury's verdict.  As noted *ante*, Avinash conceded in the trial court that Neelam's allegations of abuse were necessary to Avinash's case, in that they supported his justification for failing to travel to India to reunite with Soumitra, despite knowing exactly where Soumitra was for 18 years.  Avinash's motion in limine asked the trial court to instruct the jury that evidence of Neelam's abuse allegations not be admitted as a defense to the Civil Code section 49, subdivision (a) claim.  The court did instruct the jury that any abuse of Neelam or Soumitra was not a defense to the claim of conspiracy to abduct a child asserted by Avinash against Defendants.  Defendants' trial counsel explained that the evidence

11

elicited would be used, not to establish a defense, but to impeach Avinash's testimony that he had a happy marriage before Soumitra's abduction, and to disprove Avinash's $20 million emotional distress damages claim.

Avinash correctly quotes the trial court as saying, "I made a big mistake in allowing you to bring in all this abuse testimony. That's my problem. I allowed it and that took days of testimony, days of testimony, and I allowed it because I thought it was fair." The court's statement at the conclusion of the trial does not establish an abuse of discretion when the decision was made before or during trial to admit certain evidence. Where an appellant contends evidence was erroneously admitted at trial, he or she bears a heavy burden. It is insufficient simply to establish that, based on hindsight, admitted evidence *could* have been properly excluded. (*Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1237 [appellate court assesses whether trial court abused its discretion based on state of the record at the time the trial court's decision was made, not based on later developments].)

We find no abuse of discretion in the trial court's determination that Evidence Code section 352 did not preclude admission of the evidence in question.

4. *Relevance of Abuse as Defense to Child Abduction*

Defendants argue the evidence in question was relevant because abuse is a defense to child abduction under California law. The authorities they cite, however, do not support this argument. The Restatement Second of Torts, section 700, provides: "One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent." The Restatement rule is not the same as the California statute, as noted by section 700, comment c, pages 505-506: "When the parents are by law jointly entitled to the custody and earnings of the child, no action can be brought against one of the parents who abducts or induces the child to leave the other. . . . One parent may be liable to the other

12

parent for the abduction of his own child if by judicial decree the sole custody of the child has been awarded to the other parent." California law, by contrast, creates a cause of action by one parent against the other for child abduction, even if they shared custody at the time the abduction occurred. (See *Rosefield v. Rosefield* (1963) 221 Cal.App.2d 431, 434-435.)

Further, the privilege of which comment e to the Restatement Second of Torts, section 700, page 506, speaks, and on which Defendants rely, does not apply in this case: "One is not liable for rescuing a child from physical violence inflicted by its parent in excess of his parental privilege. To entitle the actor to immunity, however, it must appear reasonably probable that the child is about to suffer immediate harm or that it will be subjected to immediate harm if it returns to its home. It is also necessary to the actor's protection that he act for the purpose of saving the child from the threatening danger or of assisting him to escape from it. [Citation.] A private citizen is not privileged, however, to abduct or entice a child from its parent to save the child from what the actor reasonably believes to constitute improper surroundings or immoral influences, nor to afford it advantages superior to those available in its home. Any person authorized by law to remove a child from an improper home is privileged when acting within the scope of his authority." In *Robbins v. Hamburger Home for Girls* (1995) 32 Cal.App.4th 671, 675, summary judgment was granted in favor of a shelter that took in the plaintiffs' 15-year-old daughter. The court there concluded that the defendant shelter and its employees did not interfere with the plaintiff parents' rights because they did not induce the daughter to come to or stay at the shelter, and the shelter employees' conduct was privileged because they had a reasonable apprehension that the daughter could suffer immediate physical harm if she returned home or if they told the plaintiff parents where she was. (*Id.* at pp. 681-682.) Here, by contrast, there is no factual support for a claim that Defendants were privileged in their actions (assuming they did commit the acts alleged).

13

*Horowitz v. Sacks* (1928) 89 Cal.App. 336, relied on by Defendants, is factually distinguishable. There, the defendants were sued for abducting and alienating the affections of a wife for her husband. (*Id.* at pp. 338-339.) The wife was Olga Sacks's daughter, who was apparently of "unsound mind." (*Id.* at pp. 339, 341-342.) The appellate court found no violation of Civil Code section 49 by Sacks, in part, because "[w]ithout becoming liable a mother may advise her child in good faith as to the child's domestic affairs, especially when the offspring is an infant or of unsound mind. [Citation.] The same right extends to persons *in loco parentis*. [Citation.] As the complaint charges a conspiracy against all of the defendants, the existence of anything which justified the mother in bringing about the separation will excuse the acts of the other defendants. [Citation.]" (*Horowitz v. Sacks*, *supra*, at p. 341.)

We therefore reject Defendants' argument that the evidence was properly admitted because it was relevant as a defense to the claim of child abduction. Because we have concluded the evidence was otherwise admissible, the lack of relevance as a defense is immaterial.

5. *Any Error Was Harmless.*

Even if the trial court had erred in admitting the evidence of the alleged abuse, the error was not prejudicial because the jury found in favor of Meera and Mohan on the first element of Avinash's claim—that they lacked knowledge of Neelam's plan to take Soumitra to India without Avinash's knowledge or consent. Therefore, it is not reasonably probable that Avinash would have received a more favorable result if the evidence of alleged abuse had been excluded. (See *Casella v. SouthWest Dealer Services, Inc.* (2007) 157 Cal.App.4th 1127, 1146.) Avinash argues that the result would have been different in the absence of the allegedly improper evidence because the evidence of abuse caused the jury to see him as a bad person, and to doubt the reliability of his testimony. However, the jury's only finding in the special verdict form was that Mohan and Meera did not have knowledge of Neelam's plan to abduct Soumitra.

14

Avinash's credibility was in no way implicated at that point because Avinash had not provided any testimony regarding Mohan's and Meera's alleged knowledge of the plan. Further, Avinash provides no basis for assuming the jury did not discharge its duty to fairly consider the evidence in rendering its verdict. (See *McShane v. Cleaver* (1966) 247 Cal.App.2d 260, 266 ["this court should assume that the jury properly discharged its duty and applied all of the instructions which were given"].) Avinash has failed to show it is reasonably probable he would have received a more favorable result at trial, absent the admission of the evidence regarding his alleged abuse of Neelam; any error in admitting the evidence was therefore harmless.

B.

*Polygraph Evidence*

Avinash argues the trial court erred by refusing to admit in evidence the results of a polygraph examination that he had taken. In criminal cases, polygraph evidence may only be admitted, based on the parties' stipulation: "(a) Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court, unless all parties stipulate to the admission of such results. [¶] (b) Nothing in this section is intended to exclude from evidence statements made during a polygraph examination which are otherwise admissible." (Evid. Code, § 351.1.)

Evidence Code section 351.1 does not apply in civil cases. "Evidence Code section 351.1 does not speak to the use of polygraph evidence in proceedings outside the context of criminal proceedings, and we have found no statutory or judicially created bar to a party offering polygraph evidence in civil proceedings. [¶] . . . Evidence Code section 351.1 thus does not, by its terms, operate as a bar to the admission of polygraph

15

evidence in SVP [(sexually violent predator) civil commitment] proceedings." (*People v. Fields* (2009) 175 Cal.App.4th 1001, 1017.) We therefore analyze the exclusion of the polygraph examination results under basic evidentiary principles.[5]

Absent an offer of proof that a polygraph examination is accepted as reliable in the scientific community, it is presumptively unreliable and inadmissible. (*People v. Harris* (1989) 47 Cal.3d 1047, 1094; see *United States v. Scheffer* (1998) 523 U.S. 303, 309-310 [noting lack of consensus regarding reliability of polygraph evidence].) As recently as last year, a California appellate court concluded, "there was significant controversy within the relevant scientific community about the reliability of polygraph examination at the present time." (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 130.) Avinash did not attempt to prove the reliability of his polygraph examination results in the trial court. On appeal, he contends that he had an expert witness who could have testified to the reliability of polygraph examinations; Avinash did not, however, make an offer of proof to the trial court. We find no error in the trial court's decision to exclude evidence of the polygraph examination results.

C.

*Expert Testimony Regarding Avinash's Emotional Distress*

Avinash argues the trial court erred by allowing Dr. Mark Lipian to testify as an expert regarding Avinash's claims of emotional distress.

Avinash first argues that Dr. Lipian's testimony was lacking in foundation. Dr. Lipian never spoke with, much less examined, Avinash. Dr. Lipian's opinion was based on his review of Avinash's deposition testimony, declarations and other sworn

---

[5] Defendants cite *Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 602-603, for the proposition that Evidence Code section 351.1 applies in civil cases: "In the absence of a stipulation between the parties, the results of a polygraph examination, as well as the fact of an offer to take, a refusal to take, or the taking of a polygraph examination, are inadmissible as evidence in California criminal and civil proceedings. [Citations.]" We disagree with the *Rufo* court's conclusion, based on the analysis in *People v. Fields*, *supra*, 175 Cal.App.4th 1001.

statements by Avinash, correspondence between Avinash and Soumitra, correspondence between Avinash and others including legal authorities, a portion of Avinash's medical records, and correspondence from Neelam. That Dr. Lipian did not personally examine Avinash went to the weight of his testimony, not its admissibility. (*Bell v. Mason* (2011) 194 Cal.App.4th 1102, 1112.)

*People v. James* (1989) 208 Cal.App.3d 1155, on which Avinash relies, is distinguishable. In that case, the proposed expert witness testified that he would normally need to spend two hours with a patient in order to "make an accurate diagnostic impression." (*Id.* at p. 1164.) However, the expert had spent less than 30 minutes with the defendant. (*Ibid.*) The trial court refused to let the expert testify as to his diagnostic impression of the defendant because, by the expert's own testimony, he lacked "the basis for a meaningful opinion." (*Ibid.*) The appellate court concluded the trial court did not abuse its discretion in excluding the expert's opinion testimony. (*Ibid.*) In this case, Dr. Lipian testified that his field of forensic psychiatry involves a different approach and technique from clinical psychiatry, and that he did not need to personally evaluate a subject in order to render an opinion.

Avinash also argues Dr. Lipian's opinion was not admissible under Evidence Code section 801 because his opinion was as to a matter that was within the common experience of the jury. "[F]acts which may be ascertained by the ordinary use of the senses of a nonexpert" need not be established by expert opinion testimony. (*Walter v. England* (1933) 133 Cal.App. 676, 680.) This does not mean, however, that expert testimony should be excluded if the jury has any basic knowledge of the subject matter. "The jury need not be wholly ignorant of the subject matter of the opinion in order to justify its admission; if that were the test, little expert opinion testimony would ever be heard. Instead, the statute declares that even if the jury has some knowledge of the matter, expert opinion may be admitted whenever it would 'assist' the jury. It will be excluded only when it would add nothing at all to the jury's common fund of

17

information, i.e., when 'the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness' [citation]." (*People v. McDonald* (1984) 37 Cal.3d 351, 367, overruled on other grounds in *People v. Mendoza* (2000) 23 Cal.4th 896; see *People v. Lindberg* (2008) 45 Cal.4th 1, 45.)

Avinash also argues the trial court erred by allowing Dr. Lipian to testify regarding Avinash's credibility. An expert witness may not give an opinion as to whether a witness is telling the truth. (*People v. Curl* (2009) 46 Cal.4th 339, 359; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 82.) Dr. Lipian opined that Avinash had "certain traits associated with antisocial personality disorder," including "a pattern of malingering, which is telling of untruths, which is very much a trait of antisocial personality disorder." In support of this opinion, Dr. Lipian identified specific examples of Avinash's malingering behavior, including Avinash's pattern of "progressive opportunistic embellishment to suit [his] legal needs and his quest for vengeance," and his pattern of changing the factual bases for his legal claims based on the party or parties from whom he was seeking damages. Dr. Lipian's testimony was not that Avinash was lying or that he was not credible in his testimony at trial; the jury was capable of comparing Avinash's earlier statements and sworn testimony with his testimony in the present trial to determine whether he was credible. Dr. Lipian's testimony, however, took Avinash's earlier contrary statements, and placed them in a medical context, which is something beyond the understanding of the average lay person. The trial court did not err in allowing that testimony.

Avinash next argues that Dr. Lipian inappropriately transmitted inadmissible hearsay to the jury through his expert testimony. It is permissible for an expert witness to express an opinion based on hearsay. (*Continental Airlines, Inc. v. McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 414-415.) Avinash complains, however, that Dr. Lipian essentially provided to the jury the hearsay evidence that was

18

not otherwise before it. Avinash cites specific examples of information that Dr. Lipian received from Neelam, Soumitra, and others, which should not have been submitted to the jury. We need not determine whether this was error because Avinash cannot establish any prejudice resulting from the admission of Dr. Lipian's testimony.

In any event, any error in admitting Dr. Lipian's testimony was harmless. Dr. Lipian's testimony went solely to the issue of Avinash's damages due to his alleged emotional distress. The jury found Meera and Mohan had no knowledge of Neelam's plan to abduct Soumitra, an issue on which Avinash provided no testimony. The jury never reached the issue of damages, so there could be no prejudice in the admission of Dr. Lipian's testimony. Additionally, even absent Dr. Lipian's testimony, evidence was before the jury that, contrary to his testimony, Avinash did not suffer any physical manifestations of his alleged emotional distress. Further, there was ample testimony that Avinash never sought to develop a relationship with Soumitra, before or after he moved to the United States to attend college, and provided no financial or other assistance to Soumitra.

## II.

### *GRANTING NONSUIT MOTIONS*

### A.

### *Standard of Review*

"A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. [Citation.] 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor."' [Citation.] A mere 'scintilla of evidence' does

19

not create a conflict for the jury's resolution; 'there must be *substantial evidence* to create the necessary conflict.' [Citation.] [¶] In reviewing a grant of nonsuit, we are 'guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff.' [Citation.] We will not sustain the judgment '"unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law."' [Citation.]" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.) We may not, however, consider the supporting evidence in isolation, and disregard any contradictory evidence; rather, we must review the entire record. (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581.)

## B.

### *Sunila's Nonsuit Motion*

The only evidence supporting a claim against Sunila was Rajesh's testimony regarding the hearsay statements of others. Rajesh testified that Neelam told him, in 1996, that Sunila drove her to the airport in 1990. Madhavi, who, Rajesh testified, was also present at the lunch when Neelam made that statement, testified Neelam never told them that Sunila helped Neelam travel to India. Indeed, Madhavi testified no lunch or other meeting between Neelam, Rajesh, and Madhavi ever occurred.

Rajesh also testified that in 1997, at a social gathering at which Mohan was present, Meera told him Sunila had taken Neelam and Soumitra to the airport in 1990. Mohan testified Rajesh's testimony on this point was false.

Contrary to Rajesh's testimony, Sunila denied she drove Neelam to the airport, or helped Neelam in any way to leave for India.

Avinash argues there was circumstantial evidence supporting his claim against Sunila. None of the evidence cited, however, establishes, directly or

20

circumstantially, that Sunila drove Neelam to the airport, or was in any other way involved in Neelam's flight to India.

There was not substantial evidence supporting Avinash's claims against Sunila. The trial court did not err in granting Sunila's motion for nonsuit.

## C.

### Madhavi's Nonsuit Motion

The evidence supporting Avinash's claims against Madhavi was equally absent. At the time Neelam and Soumitra left the United States for India, Madhavi was 18 years old and living in India. Madhavi admitted that Neelam and Soumitra travelled to California and stayed with Madhavi and Rajesh for one and one-half months in 1998. During that time, Madhavi never called Avinash or the police to advise them that Neelam and Soumitra were there. At that time, however, Neelam had been granted full custody of Soumitra via the Indian divorce decree.

Avinash's contention on appeal that Madhavi "testified that while [Soumitra] was at her house, she was completely aware that Neelam had taken [Avinash]'s son from [Avinash] without [Avinash]'s consent or knowledge," is unsupported by the 52 pages of the reporter's transcript to which Avinash cites, and is actually contrary to the state of the evidence as of the time the nonsuit motion was made and granted. Madhavi testified, without any contrary evidence, she was not aware, until Neelam was arrested in 2008, that Avinash claimed Neelam had abducted Soumitra in 1990.

There was not substantial evidence supporting Avinash's claims against Madhavi, and the trial court did not err in granting Madhavi's nonsuit motion.

## III.

### DENIAL OF AVINASH'S NEW TRIAL MOTION

In reviewing an order denying a motion for a new trial, we "'must fulfill our obligation of reviewing the entire record, including the evidence, so as to make an

21

independent determination as to whether the error was prejudicial. [Citations.]'
[Citation.]" (*Ajaxco Inc. v. E\*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 46-47.)
This differs from our review of an order granting a motion for a new trial, which we
review for abuse of discretion. (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412;
*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 187, 194.)

Avinash contends the trial court should have granted his motion for a new
trial because the trial court improperly admitted the hearsay evidence of Neelam's
allegations of abuse and the testimony of Dr. Lipian. As discussed in detail, *ante*, there
was no error in the trial court's evidentiary rulings, or the error was harmless. Our
review of the entire record, moreover, compels a conclusion that the trial court did not err
in denying the motion for a new trial. Considering all of the evidence, not simply the
evidence which Avinash contends was erroneously admitted at trial, we conclude
Avinash failed to prove the elements of any of his claims against Defendants. No direct
evidence supported Avinash's claim that Defendants conspired to assist Neelam in
abducting Soumitra and hiding him from Avinash for almost 18 years. The only
evidence tying any of Defendants to the alleged tort by Neelam was the hearsay
testimony of a single witness, Rajesh. That testimony was provided pursuant to an
agreement to dismiss Rajesh from the case, and was contrary to sworn statements he had
previously made in other courts. Even assuming that Neelam herself was liable for
damage caused to Avinash by abducting and concealing Soumitra, there was no
competent evidence that Defendants had any knowledge of Neelam's plans, much less
that they assisted her in carrying them out. We conclude the trial court did not err in
denying Avinash's motion for a new trial.

IV.

*DENIAL OF MOTIONS TO TAX COSTS*

We review the denial of a motion to tax costs for abuse of discretion.
(*Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49, 52.)

22

Sunila filed a memorandum of costs; Meera, Mohan, and Madhavi jointly filed a separate memorandum of costs. Avinash filed two separate motions to tax costs, each raising the same legal issues. The trial court denied both motions on all grounds. On appeal, Avinash advances a single argument—that the trial court erred by finding the offers of compromise served on Avinash by Defendants were made in good faith. Avinash contends that, pursuant to Code of Civil Procedure section 998, because the offers were not made in good faith, they were insufficient to allow Defendants to recover their expert witness fees.

Before trial, Sunila made an offer of $2,000 to settle the case in exchange for a full dismissal with prejudice of all claims against her. Also before trial, Madhavi, Meera, and Mohan made a collective offer of $20,000 in full settlement of the case and dismissal with prejudice. Avinash recovered nothing against any of Defendants. "Where, as here, the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable and the offeror is eligible for costs as specified in [Code of Civil Procedure] section 998. The burden is therefore properly on plaintiff, as offeree, to prove otherwise." (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 700.)

Avinash contends that, because he was seeking $10 million in compensatory damages and $10 million in punitive damages, the settlement offers were not made in good faith. Avinash also notes that he recovered a large default judgment against Neelam and Thakur. "Whether an offer to compromise is made in good faith, however, cannot be measured by the amount of claimed damages or a party's subjective belief in the case's value. An offer to compromise may be 'realistically reasonable' and justify cost shifting even though the party receiving the offer is unlikely to accept it as a consequence of the party's skewed valuation of the case." (*Essex Ins. Co. v. Heck* (2010) 186 Cal.App.4th 1513, 1530.)

23

Avinash failed to meet his burden of proving Defendants' Code of Civil Procedure section 998 offers were not reasonable, and the trial court did not err in denying Avinash's motions to tax costs.

DISPOSITION

The judgment and postjudgment orders are affirmed. Defendants to recover costs on appeal.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.